UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JULIE LOVE,

      Plaintiff,

v.                          Case No: 2:20-cv-379-JES-MRM

LEE MEMORIAL HEALTH SYSTEM
d/b/a CAPE CORAL HOSPITAL
and  JEOVANNI  HECHAVARRIA,
R.N.,

      Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of defendant Lee Memorial Health System's Motion For Summary Judgment And Memorandum of Law (Doc. #40) filed on August 6, 2021. Plaintiff filed a Response in Opposition (Doc. #46) on August 27, 2021, to which defendant filed a Reply (Doc. #51) on September 3, 2021. For the reasons set forth below, the motion is denied.

**I.**

    Plaintiff Julie Love (Plaintiff or Love) filed a six-count Amended Complaint against defendants Lee Memorial Health System d/b/a Cape Coral Hospital (Lee Memorial or Defendant) and Jeovanni Hechavarria, R.N. (Hechavarria). (Doc. #23.) Lee Memorial now seeks summary judgment on all the claims in which it is a defendant. (Doc. #40.)

## A. Factual Background[1]

Defendant Lee Memorial is a Florida public health care system which operates as Cape Coral Hospital (the Hospital). (Doc. #23, ¶¶ 4, 8-9.) In September 2014, Lee Memorial hired Hechavarria, a registered nurse, as a nurse intern for the Hospital. (Doc. #41-1, ¶¶ 21-22; Doc. #47-10, p. 10.) Prior to being hired by Lee Memorial, Hechavarria completed an employment application, underwent three interviews, and was subject to national criminal background screening conducted by a third-party company named "Sterling." (Doc. #41-1, ¶¶ 7-8, 15.) Hechavarria's background criminal screening provided an "all clear" result. (Id., ¶ 17.)

In fact, before Hechavarria's employment with Lee Memorial, he had multiple injunctions issued against him for domestic violence, and has been disciplined by former employers for workplace misconduct. In 1999, a temporary injunction for protection against domestic violence entered against Hechavarria after he slapped and punched a woman for refusing to have sexual intercourse with him. (Doc. #47-2.) In 2007, Hechavarria received

---

[1] The background facts are either undisputed or read in the light most favorable to Plaintiff as the nonmoving party. However, these facts, accepted at the summary judgment stage of the proceedings, may not be the "actual" facts of the case. Harris v. Wingo, 845 F. App'x 892, 896 (11th Cir. 2021).

a "general discharge" from the United States Navy for misconduct described as a "serious offense." (Doc. #47-6; Doc. #47-7.)  In 2008, while working for Harbor Nissan, Hechavarria received an Employee Warning Notice for a violation of company procedures and was told "to refrain from behavior or activities which are or could be seen or deemed as inappropriate while on company time or premises."  (Doc. #47-8.)  After another warning, Harbor Nissan terminated Hechavarria for an unknown reason in 2010. (Doc. #47-9.) In 2010, a second temporary injunction for protection against domestic violence was entered against Hechavarria for stalking his wife after she left him and obtained her own apartment. (Doc. #47-4.)

On the night of March 17, 2015, Hechavarria was tending to patient Brianna Hammer, who had been admitted to the Hospital for suspected food poisoning and flu illness.  (Doc. #47-16, pp. 119-20.)  Ms. Hammer alleged that Hechavarria engaged in inappropriate behavior by groping her breasts on several occasions, pulling her underwear down to look at her vagina and anus, and digitally penetrating her vagina.  (Id., pp. 151-54, 162, 171-72.)

Ms. Hammer reported Hechavarria's sexual assault to Lee Memorial personnel, as well as the Cape Coral police. (Id., pp. 180-82.) Ms. Hammer informed hospital staff (a supervisor and security guard) and a police officer that Hechavarria's gloves and gown, which he wore during the assault, were in the hospital room

3

trash can. (Id., pp. 182, 190-91.) Nevertheless, no evidence was collected. (Id., p. 191; Doc. #47-18, p. 2.) The Cape Coral police officer conducted a brief interview of Ms. Hammer, but according to Lee Memorial's security guard, the police did not think Ms. Hammer's story was valid. (Doc. #47-17, pp. 42-45.) Lee Memorial's risk manager, Pamela Palmerton, also investigated Ms. Hammer's complaint. (Doc. #47-18; Doc. #47-19, pp. 19-20.) Ms. Palmerton determined that Ms. Hammer's sexual assault allegations were not credible because Ms. Palmerton believed Ms. Hammer was inconsistent about the number of fingers Hechavarria inserted into her vagina, the time each assault occurred, and whether Ms. Hammer's underwear were pulled down or taken completely off. (Doc. #47-19, pp. 90-97.) Although Ms. Palmerton never spoke with the police officer who interviewed Ms. Hammer, Ms. Palmerton relied upon the police officer's opinion that Ms. Hammer was making up the allegations in reaching her determination. (Id., p. 105.)

On March 18, 2015, within twenty-four hours of the reported sexual assault, Ms. Palmerton concluded Ms. Hammer's investigation and reported to the Department of Health that Lee Memorial was unable to validate Ms. Hammer's claims. (Doc. #47-20.) Lee Memorial closed its investigation before the police and State Attorney concluded their investigation, and before a local police detective was able to interview Ms. Hammer. (Doc. #47-19, pp. 102-09.) On March 29, 2015, the detective interviewed Ms. Hammer

and "believed something occurred." (Doc. #47-25, p. 23.) On August 15, 2018, the State Attorney brought criminal charges against Hechavarria as a result of Ms. Hammer's allegations. (Doc. #47-26.)

On the day of the assault, Hechavarria was placed on paid leave during the investigation, in part for "his safety" because Ms. Hammer's boyfriend made threatening Facebook posts. (Doc. #47-18, p. 3.) Hechavarria was to remain on paid leave until the police investigation was completed, but he was permitted to return to work just three days after the assault and before the police concluded their investigation. (Id., p. 3; Doc. #47-11, p. 114; Doc. #47-19, pp. 102-03.) Lee Memorial never disciplined Hechavarria, nor did it train him on appropriate patient contact, provide increased supervision, or restrict his access to female patients. (Doc. #47-6, pp. 115-18; Doc. #47-11, pp. 94-95; Doc. #47-12, pp. 89-91.) Lee Memorial also never conducted additional investigation into Hechavarria's background following the allegations of sexual assault. (Doc. #47-28; Doc. #47-29; Doc. #47-30, pp. 75, 79.)

On April 11, 2016, Plaintiff was admitted to Cape Coral Hospital to receive treatment for pancreatitis. (Doc. #47-33, pp. 40, 47.) Plaintiff was treated at the hospital for her condition for several days until she was discharged on April 18, 2016. (Id., p. 45.) On or about April 17, 2016, Hechavarria was working the

night shift, during which he allegedly assaulted and raped Plaintiff while she was on narcotic pain medication. (Id., pp. 51, 118-22, 125.) In April 2018, Plaintiff reported Hechavarria's misconduct to the police. (Id., pp. 124-25.)

On March 3, 2020, Hechavarria was convicted of "sexual battery when victim helpless," after the State of Florida brought charges against him for sexually battering a Lee Memorial patient, Ms. Donia Goines. (Doc. #47-36, pp. 233, 252; Doc. #47-37.)

**B. Procedural Background**

In May 2020, Plaintiff initiated this action by filing a five-count Complaint[2]. (Doc. #1-1.)  On August 10, 2020, defendant Hechavarria filed his answer and affirmative defenses, along with a Motion to Dismiss Count V of the Complaint.  (Doc. #17; Doc. #18.) Defendant Hechavarria's motion was granted, and thereafter Plaintiff filed a six-count Amended Complaint against Lee Memorial and Hechavarria. (Doc. #23.) Plaintiff asserts the following claims against Lee Memorial: (1) violation of her civil rights pursuant to 42 U.S.C. § 1983; (2) negligent retention; (3) negligent supervision; (4) negligence; and (5) negligent hiring. (Id., pp. 4-12.) Plaintiff asserts a sixth claim solely against

---

[2] Plaintiff initially filed this lawsuit in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida (Doc. #3), but Lee Memorial removed the case to this Court based on federal question and supplemental jurisdiction. (Doc. #1).

Hechavarria for sexual assault and sexual battery. (Id., p. 13.) On August 6, 2021, defendant Lee Memorial filed the Motion for Summary Judgment now before the Court, arguing there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law. (Doc. #40.)

**II.**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party.  Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."  St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

**A. Count I — Violation of 42 U.S.C. § 1983**

Count I of the Amended Complaint alleges pursuant to 42 U.S.C. § 1983 that Lee Memorial, while acting under color of state law, deprived Plaintiff of her "constitutional right to personal security and bodily integrity, including the right to be free from sexual abuse and sexual assault." (Doc. #23, ¶¶ 25-26.) While conceding it is a municipality, Lee Memorial argues that it is entitled to summary judgment because Plaintiff cannot demonstrate that the alleged constitutional violation resulted from a custom, policy, or practice of Lee Memorial.  (Doc. #40, pp. 10-11.)

"Section 1983 creates a private cause of action against any person who, under color of state law, deprives an individual of federal rights." Buckman v. Halsey, No. 20-13596, 2021 WL 4127067, 2021 U.S. App. LEXIS 27240, at *3 (11th Cir. Sep. 10, 2021) (citing 42 U.S.C. § 1983). "Municipalities may be found liable under § 1983 only when a plaintiff shows: (1) that h[er] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Kraus v. Martin Cty. Sheriff's Office, 753 F. App'x 668, 674 (11th Cir. 2018) (citing McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (quotations omitted)); see Whittier v. City of Sunrise, 395 F. App'x 648, 650 (11th Cir. 2010) (a municipality will not be liable "unless the plaintiff shows that an official policy or custom of the city was the 'moving force' behind the constitutional deprivation."). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality" and "[a] custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).

The parties agree for purposes of summary judgment that Hechavarria violated Plaintiff's constitutional rights to

"personal security and bodily integrity" when he sexually assaulted Plaintiff. (Doc. #40, p. 11 n.6; Doc. #46, p. 14.) Thus, the remaining issues are whether Lee Memorial had a custom or policy that evidences deliberate indifference to Plaintiff's constitutional rights, and whether the policy or custom caused Hechavarria's sexual assault.

### (1) Deliberate Indifference to Plaintiff's Constitutional Rights

"Where a municipality's failure to train or supervise its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants, such a shortcoming may constitute a 'policy or custom' actionable under Section 1983." Shehada v. Tavss, 965 F. Supp. 2d 1358, 1373 (S.D. Fla. 2013) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)). "To establish deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Favors v. City of Atlanta, 849 F. App'x 813, 817 (11th Cir. 2021) (citing Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).

Plaintiff alleges that Lee Memorial had "policies of inadequate supervision and of inaction towards the investigation of complaints reported by other patients regarding sexual abuse and sexual assault committed by . . . Hechavarria . . ." that

constitute deliberate indifference to the rights of persons with whom Hechavarria came into contact. (Doc. #23, ¶ 33.) Defendant responds that Hechavarria's alleged assault was so obviously improper that Lee Memorial's purported failure to supervise, discipline, or investigate him could not have been the cause of Hechavarria's unscrupulous actions. (Doc. #40, p. 12.)

Defendant is correct that if the improper action "is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference." See Franklin v. Tatum, 627 F. App'x 761, 768 (11th Cir. 2015) (citing Sewell, 117 F.3d at 49). However, "a municipality's right to rely on the common sense of its [employees] to refrain from perpetrating sex crimes . . . is not unbounded, [in] that such reliance must give way where the municipality has notice to the contrary." Doe v. City of Demopolis, 799 F. Supp. 2d 1300, 1315 (S.D. Ala. 2011) (citing Floyd v. Waiters, 133 F.3d at 786, 796 (11th Cir. 1998))(quotations omitted); see, e.g., Walker v. City of New York, 974 F.2d 293, 300 (2nd Cir. 1992) ("While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so."); Williams v. Enders, No. 5:08-cv-335(HL), 2010 U.S. Dist. LEXIS 24299, 2010 WL 989978, *4 (M.D. Ga.

Mar. 16, 2010) (opining that if municipality was aware of history of officers bartering arrests for sexual favors, then "the City may display deliberate indifference if it relied on the common sense of the members of the Police Department, rather than taking corrective measures.").

Plaintiff alleges that "[b]efore the sexual abuse and sexual assaults were committed against Plaintiff, Defendant . . . was aware and/or was put on notice of the potentially harmful propensities of . . . Hechavarria . . . since Lee Memorial "received complaints of sexual abuse, sexual assault and other improper conduct by [Hechavarria] from other female patients . . . ." (Doc. #23, ¶¶ 45-46.)  "A plaintiff may demonstrate notice by showing a 'widespread pattern of prior abuse' or even a single earlier constitutional violation." Am. Fed'n of Labor & Cong. of Indus. Organizations v. City of Miami, 637 F.3d 1178, 1189 (11th Cir. 2011) (citing Gold, 151 F.3d at 1351).  The Eleventh Circuit has cautioned that establishing notice of a need to train or supervise is difficult because "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold, 151 F.3d at 1350; see also City of Miami, 637 F.3d at 1189.  "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and

supervise. <u>Lloyd v. Leeper</u>, 451 F. Supp. 3d 1314, 1334 (M.D. Fla. 2020) (citing <u>Gold</u>, 151 F.3d at 1351).

Here, Plaintiff alleges that Lee Memorial had policies of inadequate supervision as to Hechavarria and inadequate investigation of complaints regarding sexual abuse and assault committed by Hechavarria, both of which constitute deliberate indifference to the rights of those persons Hechavarria encountered. (Doc. #23, ¶¶ 27-30, 33.) Plaintiff primarily relies upon Ms. Hammer's previous sexual assault allegations against Hechavarria to assert that Lee Memorial had notice.[3] (Doc. #46, pp. 17-19.) Given Ms. Hammer's allegations, a reasonable jury could conclude that Lee Memorial had notice of a need to train, supervise and investigate due to Hechavarria's prior sexual assault against Ms. Hammer.  The record evidence demonstrates that Lee Memorial's risk manager, Ms. Palmerton, determined that Ms. Hammer's sexual

---

[3] Relying upon <u>Wideman v. Shallowford Community Hospital, Inc.</u>, 826 F.2d 1030 (11th Cir. 1987), Defendant argues that "Plaintiff cannot show that Lee Health had notice of the need for improved supervision, discipline, or investigation of Hechavarria merely on the basis of Hammer's prior allegation." (Doc. #40, p. 16.) Although it is true that "proof of a single, isolated incident of unconstitutional activity generally is not sufficient to impose municipal liability", <u>Wideman</u>, 826 F.2d at 1032 (citations omitted), Plaintiff need not come forward with a pattern of abuses because "even a single earlier constitutional violation" may suffice to establish notice.  <u>City of Miami</u>, 637 F.3d at 1189; <u>see</u> <u>Hinson v. Judd</u>, No. 8:17-cv-2039-T-27SPF, 2019 WL 4305489, 2019 U.S. Dist. LEXIS 154590, at *8 (M.D. Fla. Sep. 11, 2019) (stating the same).

assault allegations were not credible as Ms. Palmerton believed Ms. Hammer's recollection of the assault was inconsistent. (Doc. #47-19, pp. 90-97.) Ms. Palmerton, however, concluded her investigation in one day without speaking with the local police officer who also interviewed Ms. Hammer. (Doc. #47-19, p. 105.) Likewise, the evidence suggests that Ms. Palmerton (as well as any other Lee Memorial staff member) failed to collect and preserve physical evidence of the assault as mandated by Lee Memorial's policy,[4] and closed the Hammer investigation prior to the case being assigned to and investigated by a Cape Coral Police Department detective. (Id., pp. 77-80, 84-85, 103-08; Doc. #47-21, p. 2.)

The evidence of record also shows that Lee Memorial allowed Hechavarria to return to work before the Cape Coral detective initiated and concluded Ms. Hammer's investigation, and prior to the detective informing Lee Memorial that "something happened" and that the case was being referred to the State's Attorney's Office for review. (Doc. #47-11, pp. 112-13; Doc. #47-19, pp. 102-03; Doc. #47-25, pp. 27-28.) Hechavarria returned to work with no increased supervision or training on appropriate patient conduct,

---

[4] Lee Memorial's "Sexual Abuse Prevention and Reporting Risk Management" policy and procedure manual states that "[ca]re shall be taken to preserve any physical evidence, including evidence of semen, blood, or other materials." (Doc. #47-21, p. 2.)

Ms. Hammer's sexual assault allegations were not documented in Hechavarria's performance records, Hechavarria did not comply with HR's recommendation that he attend an Employee Assistance Program, and Hechavarria was never restricted from caring for other female patients. (Doc. #47-6, pp. 115-18; Doc. #47-11, pp. 94-95; Doc. #47-12, pp. 89-91.)

Viewing the evidence and inferences in a light most favorable to Plaintiff, the Court finds there exists genuine issues of material fact as to whether Lee Memorial knew of a need to investigate and supervise Hechavarria regarding the alleged sexual assault complaints, and whether it made a deliberate choice not to take any action. See, e.g., Franklin, 627 F. App'x at 765-66 (concluding that a jury could find that a municipality was on notice of an officer's criminal conduct after the first report of misconduct, and that it was deliberately indifferent to a substantial risk of serious harm when it failed to take sufficient action)[5]; Cottone v. Jenne, No. 00-7545-CIV-ZLOCH, 2006 U.S. Dist. LEXIS 109362, at *12 (S.D. Fla. July 20, 2006) (A municipality will not be said to have shown such deliberate indifference absent

---

[5] Defendant notes, and the Court agrees, that Franklin involved supervisory liability as opposed to municipal liability. (Doc. #40, p. 16.) The Court, however, finds Franklin instructive as to the discussion of deliberate indifference.

a conscious choice made in the face of notice of facts giving rise to an inference of substantial risk of serious harm).

### (2) Whether Lee Memorial's Inaction Was The Moving Force Behind Hechavarria's Alleged Sexual Assault

Finally, "[r]egardless of whether the basis of the claim is an officially promulgated policy or an unofficially adopted custom, it must be the 'moving force behind the constitutional deprivation before liability may attach.'" Hope v. Taylor, No. 8:20-cv-196-VMC-AAS, 2021 U.S. Dist. LEXIS 33281, at *26 (M.D. Fla. Feb. 23, 2021) (citing Fundiller v. City of Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985)). Thus, the municipality must be at fault for establishing a policy or custom and a causal link must exist between the custom or policy and the violation of constitutional rights. See Okla. City v. Tuttle, 471 U.S. 808, 824 (1985).

Lee Memorial argues that Plaintiff cannot establish that its "policy" caused Hechavarria to sexually assault Plaintiff (Doc. #46, p. 19), but "[t]he presence of the requisite causation in a case brought under 42 U.S.C. § 1983 is normally a question of fact for the jury." Jackson v. Stevens, 694 F. Supp. 2d 1334, 1336 n.1 (M.D. Ga. 2010); see also Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004) ("While we are aware that a Section 1983 plaintiff must demonstrate that the defendant's actions were the proximate cause of the violation of his federally protected right,

the presence of the requisite causation is normally a question of fact for the jury." (citation omitted)). The Court therefore denies Defendant's motion as to Plaintiff's § 1983 claim.

**B. Counts II and III — Negligent Retention and Negligent Supervision**

Count II and Count III of the Amended Complaint allege that Lee Memorial was negligent in retaining and supervising Hechavarria. Specifically, Plaintiff asserts that despite having notice of incidents involving sexual abuse and assault by Hechavarria, Lee Memorial allowed him to continue in his job duties, and failed to supervise, discharge, or terminate Hechavarria before he encountered Plaintiff and sexually assaulted her. (Doc. #23, ¶¶ 38-50.) Because "[t]he terms 'negligent retention' and 'negligent supervision' have the same meaning and are used interchangeably by Florida courts", Perry v. Walmart Assocs., No. 2:18-cv-606-FtM-29NPM, 2020 U.S. Dist. LEXIS 41210, at *40 (M.D. Fla. Mar. 10, 2020), the Court will address these claims together.

"Negligent Supervision and retention occur when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness and the employer fails to take further action such as investigation, discharge, or reassignment." Bright v. City of Tampa, No. 8:16-cv-1035-T-17MAP, 2017 U.S. Dist. LEXIS 218868, at

*22 (M.D. Fla. May 17, 2017) (citing <u>Watson v. The City of Hialeah</u>, 552 So.2d 1146, 1148 (Fla. 3d DCA 1989)).  Liability for negligent supervision attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action. <u>Id.</u> (citing <u>Dep't of Envt'l Prot. v. Hardy</u>, 907 So. 2d 655, 660 (Fla. 5th DCA 2005)). "[A]s in other negligence causes of action, the conventional elements of duty, breach, causation, and damages must be shown in negligent [supervision and retention] claims." <u>Avrett v. Festival Fun Parks, Ltd. Liab. Co.</u>, No. 15-80526-CIV, 2016 U.S. Dist. LEXIS 5285, at *13 (S.D. Fla. Jan. 15, 2016) (citing <u>Wynn v. City of Lakeland</u>, 727 F. Supp. 2d 1309 (M.D. Fla. 2010)).

**(1)   Whether Lee Memorial Knew or Should Have Known of Hechavarria's Unfitness**

Plaintiff alleges that Lee Memorial was "aware and/or was put on notice of the potential harmful propensities" of Hechavarria, including but not limited to his prior sexual assault of Ms. Hammer the year before. (Doc. #23, ¶¶ 38, 45.) Lee Memorial argues that Plaintiff cannot establish that it had notice of Hechavarria's unfitness at the time Plaintiff was allegedly assaulted. (Doc. #40, p. 22.)  Defendant asserts that this allegation is unavailing because Lee Memorial not only conducted a full investigation of Ms. Hammer's claims, but it reasonably relied upon the Cape Coral Police Department's findings that Ms. Hammer had fabricated the

allegations, along with the Department of Health's findings that it was unable to substantiate Ms. Hammer's allegations. (Doc. #40, p. 22; Doc. #41-8, ¶ 12.)   Thus, Defendant asserts that there was nothing to indicate that Hechavarria was unfit for continued employment. (Doc. #40, p. 22.)

The Court finds that a genuine dispute of material fact exists as to whether Lee Memorial had notice of Hechavarria's unfitness. Ms. Hammer informed the hospital that Hechavarria sexually assaulted her while he was working on the night shift, and the Cape Coral Police detective informed Lee Memorial's risk manager that the detective's investigation revealed "something happened" with Ms. Hammer and was referring the matter to the State Attorney. The Court finds that a reasonable jury could find these incidents were sufficient to provide notice to Lee Memorial of Hechavarria's propensity for sexual assault.

**(2)  Whether Lee Memorial Failed to Take Appropriate Action**

Next, Defendant argues that Plaintiff cannot prove the second prong of her negligent retention and supervision claim since Lee Memorial did, in fact, conduct an appropriate investigation into Ms. Hammer's allegations against Hechavarria.  (Doc. #23, p. 40.) A reasonable jury could well find otherwise.

The record evidence demonstrates that although Lee Memorial conducted an investigation, genuine issues of material fact exist as to whether the investigation was sufficient to be an

"appropriate action." As discussed above, Ms. Palmerton, the Hospital's principal investigator of the Hammer case, never collected physical evidence of the allege assault, failed to speak with the local police officer who initially interviewed Ms. Hammer, and concluded her investigation before the local police detective investigated Ms. Hammer's claims. (Doc. #47-19, pp. 77-80, 83-84, 102-06; Doc. #47-21.) The Hospital's HR Department permitted Hechavarria to return to work on March 26, 2015, without speaking with Ms. Palmerton about her investigation, before the Cape Coral detective spoke with Ms. Hammer, and with no knowledge of whether the local police had completed its investigation, contrary to hospital policy.[6] (Doc. #47-19, pp. 102-07, 111; Doc. #47-41, p. 5.) Drawing all reasonable inferences in favor of Plaintiff, the Court finds that a jury could conclude that Lee Memorial's investigation did not constitute an "appropriate action." See, e.g., Casey v. Wal-Mart Stores, 8 F. Supp. 2d 1330, 1343 (N.D. Fla. 1998)(denying summary judgment on a negligent supervision claim where genuine issues of fact remained as to promptness and appropriateness of defendants response); Martinez v. Celebrity Cruises, No. 20-23585-Civ-WILLIAMS/TORRES, 2021 WL 356159, 2021

---

[6] Lee Memorial's policies and procedure concerning "Corrective Action Process" state that an employee who is placed on crisis leave "may be removed from the workplace until an investigation is completed." (Doc. #47-41, p. 5.)

U.S. Dist. LEXIS 4852, at *21 (S.D. Fla. Jan. 8, 2021) (noting that the type of action reasonably required of the employer is a question of fact that will vary with the circumstances of each case).

**C. Count IV — Negligence**

Plaintiff also asserts a claim of ordinary negligence against Lee Memorial in Count IV of the Amended Complaint. (Doc. #23, ¶¶ 51-54.)  In particular, Plaintiff alleges that (1) Lee Memorial had a duty to protect her "against reasonably foreseeable criminal acts committed by [its] employees and/or third parties"; (2) Lee Memorial breached that duty by failing to take reasonable steps to protect Plaintiff from being sexually assaulted by Hechavarria; and (3) Lee Memorial's breach was a direct and proximate cause of Plaintiff's alleged sexual assault.  (Id.)  As noted by this Court before, Plaintiff has asserted a negligent security claim, which in Florida, "falls under the auspices of premises liability as opposed to ordinary negligence." Goines v. Lee Mem'l Health Sys., No. 2:17-cv-656-FtM-29CM, 2019 U.S. Dist. LEXIS 20450, at *21 (M.D. Fla. Feb. 8, 2019) (citing Nicholson v. Stonybrook Apartments, LLC, 154 So. 3d 490, 494 (Fla. 4th DCA 2015)); see also Hammer v. Lee Mem'l Health Sys., No. 2:18-cv-347-FtM-29MRM, 2018 U.S. Dist. LEXIS 178903, at *11 (M.D. Fla. Oct. 18, 2018) (finding the same). It is Defendant's position that summary judgment should be granted on Plaintiff's negligence claim because Lee Memorial (1) is

entitled to sovereign immunity, and (2) has no duty to protect plaintiff from reasonably foreseeable criminal acts. (Doc. #40, pp. 25-29.)

**(1) Sovereign Immunity**

Defendant first argues that sovereign immunity bars Plaintiff's negligence claim to the extent it is based on Lee Memorial's discretionary deployment of security measures. (Doc. #40, p. 25.) Defendant suggests that *if* Plaintiff were to assert that Lee Memorial's deployment of security personnel and devices to monitor Hechavarria was inadequate, that Lee Memorial would be immune to liability on this basis. Defendant is correct that "[g]enerally, the number and placement of supervisory personnel constitutes a discretionary decision protected by sovereign immunity." Sch. Bd. of Broward Cty. v. McCall, 322 So. 3d 655, 657 (Fla. 4th DCA 2021) (citing Davis v. State, Dep't of Corr., 460 So. 2d 452, 453 (Fla. 1st DCA 1984) (quotations omitted)). However, there are no allegations about deployment of security personnel or monitoring devices for the Court to consider at this time. Thus, it would be inappropriate for the Court to grant summary judgment on this basis.

**(2) Duty To Protect From Reasonably Foreseeable Criminal Acts**

Defendant next argues that Plaintiff cannot prove the Lee Memorial had a duty to protect Plaintiff from sexual assault

because the assault was not reasonably foreseeable. (Doc. #40, pp. 27-29.) Plaintiff was a business invitee while receiving treatment at the Hospital. Post v. Lunney, 261 So. 2d 146, 148 (Fla. 1972) ("'A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'"). Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citing Stevens v. Jefferson, 436 So. 2d 33, 34 (Fla. 1983)). This includes the duty to protect customers from criminal attacks that are reasonably foreseeable. Id. (citations omitted); see also Stone v. United States, 373 F.3d 1129, 1132 (11th Cir. 2004) ("Under Florida law, an owner of a premises has no duty to protect an invitee from the willful criminal act of another unless that conduct could have been foreseen or anticipated."). As the Eleventh Circuit explained in Banosmoreno:

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Banosmoreno, 299 F. App'x at 913.

Based on the evidence discussed above, the Court finds that a reasonable jury could conclude that the circumstances involving

the Ms. Hammer incident provided sufficient evidence that Lee Memorial knew or should have know of Hechavarria's dangerous propensities. See, e.g., Thomas v. Circle K Stores, No. 8:19-cv-2817-JSS, 2021 U.S. Dist. LEXIS 140237, at *15 (M.D. Fla. May 26, 2021)(finding that because the defendant had experienced prior violent crime in the previous 15 to 18 months, it was reasonably foreseeable that other customers could be harmed by violent crime as well); Hardy v. Pier 99 Motor Inn, 664 So. 2d 1095 (Fla. 1st DCA 1995) ("[Defendant's] experience with violent and criminal activity on its premises . . . creates an issue for the finder of fact regarding notice to [the defendant] of the potential danger and the foreseeability of the instant attack."). Accordingly, Defendant is not entitled to summary judgment as to a duty to protect Plaintiff from Hechavarria's alleged sexual assault. Defendant's motion on Plaintiff's negligence claim is therefore denied.

### D. Count V — Negligent Hiring

Count V of the Amended Complaint alleges a negligent hiring claim against Lee Memorial. (Doc. #23, ¶¶ 55-61.) Specifically, Plaintiff alleges that Lee Memorial had a duty to ensure that the patients under their care were safe and free from harm and sexual assault, and that Lee Memorial breached these duties by failing to perform an adequate background check on Hechavarria and contacting individuals with important information and/or knowledge about

Hechavarria's violent disposition. (Id., ¶¶ 59-60.) Plaintiff asserts that she was physically and sexually abused and assaulted as a proximate result of Lee Memorial's actions. (Id., ¶ 61.)

Defendant argues that it is entitled to summary judgment on Plaintiff's negligent hiring claim because (1) sovereign immunity bars the claim; and (2) even if sovereign immunity does not apply, Plaintiff cannot establish the necessary elements of the claim. (Doc. #40, pp. 29-39.) The Court will address each argument below.

**(1)  Whether Lee Memorial Is Entitled to Sovereign Immunity**

Defendant argues that sovereign immunity bars Plaintiff's negligent hiring claim because at the time Lee Memorial hired Hechavarria it had hiring policies in place and such policies were followed. (Doc. #40, pp. 29-30.)[7] Florida law broadly waives sovereign immunity for tort claims against government actors. See Vaden v. Campbell, No. 4:09cv12-RH/WCS, 2009 U.S. Dist. LEXIS 127138, at *8 (N.D. Fla. July 2, 2009) (citing Fla. Stat. § 768.28). However, the waiver of sovereign immunity in Fla. Stat. § 768.28(1) does not apply if the challenged act of the state agent was "discretionary" rather than "operational." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001). A "discretionary" function is one in which "the governmental act in

---

[7] For purposes of this issue, the Court will assume Lee Memorial qualifies as a subdivision of the State of Florida and would therefore qualify for sovereign immunity.

question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1117-18 (11th Cir. 2005) (citing Henderson v. Bowden, 737 So. 2d 532, 538 (Fla. 1999)). An "operational" function is not inherent in policy or planning but merely reflects a secondary decision as to how those policies or plans will be implemented, and is not entitled to sovereign immunity. Id. at 1118; see also Sch. Bd. of Broward Cty. v. McCall, 322 So. 3d 655, 657 (Fla. 4th DCA 2021) (citing Miami-Dade Cnty. v. Pozos, 242 So. 3d 1152, 1162 (Fla. 3d DCA 2017)) ("[D]ecisions made at the operational level—decisions or actions implementing policy, planning, or judgmental governmental functions—generally do not enjoy sovereign immunity.").

Here, Plaintiff argues that she is not alleging that Lee Memorial was negligent in the manner in which it drafted its hiring and employment policies. Rather Plaintiff alleges that Lee Memorial failed to implement or adhere to its policies and procedures when it hired Hechavarria, and failed to conduct a reasonable investigation. (Doc. #23, ¶ 57; Doc. #46, p. 30.) Thus, Plaintiff asserts that Lee Memorial's secondary decision to hire Hechavarria is a non-immune operational decision. (Doc. #46, p. 31.) The Court agrees.

In this case the "critical issue is not what the policy should have been," but whether Lee Memorial properly implemented its policies when it hired Hechavarria. Vaden v. Campbell, No. 4:09cv12-RH/WCS, 2009 WL 1919474, 2009 U.S. Dist. LEXIS 127138, at *9 (N.D. Fla. July 2, 2009) (determining whether a sheriff was negligent in removing an officer from his position would not entangle the court in a fundamental question of policy and planning); see, e.g., Willis v. Dade Cnty. Sch. Bd., 411 So. 2d 245, 246 (Fla. 3d DCA 1982) (hiring of a teacher is an operational function, subject to liability); Hollis v. Sch. Bd. of Leon Cnty., 384 So. 2d 661 (Fla. 1st DCA 1980) (implementation of the school board's policy to safely transport children is operational); Com. Carrier Corp. v. Indian River Cnty., 371 So. 2d 1010, 1020 (Fla. 1979) ("Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy."). Accordingly, the Court rejects Defendant's argument that it is immune to Plaintiff's negligent hiring claim.

**(2)  Essential Elements of Negligent Hiring Claim**

Negligent hiring occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment. Garcia v. Duffy, 492 So. 2d 435, 439

(Fla. 2d DCA 1986).   A negligent hiring claim focuses on the employer's pre-employment investigation of an employee's background.  Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002).  To sustain a negligent-hiring claim under Florida law, a plaintiff must show: "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." N.R. v. Sch. Bd. of Okaloosa Cty., 418 F. Supp. 3d 957, 995 (N.D. Fla. 2019) (citing Malicki, 814 So. 2d at 362). A plaintiff must also demonstrate that "she [was] within the zone of foreseeable risks created by the employment." Garcia, 492 So. 2d at 440.

Lee Memorial argues that Plaintiff cannot prove it failed to take appropriate action and, therefore, is unable to assert a claim for negligent hiring.  (Doc. #40, p. 39.)  Lee Memorial asserts that there is nothing to suggest that an "appropriate investigation involves extensive checks of all noncriminal civil dockets[.]" (Id.) There is evidence to the contrary.  Dr. Hyde opined that Lee Memorial fell below the standard of care for hiring Hechavarria by failing to perform an adequate background check, among other things, when it did not detect Hechavarria's prior restraining

orders that document a long history of physically violent behavior. (Doc. #47-14, pp. 5-6.) Mr. Hyde suggested that this fell below the DNV GL Healthcare standards[8] for employment. (Id., p. 6.) On the record before the Court, a reasonable fact-finder could conclude that Lee Memorial failed to conduct an appropriate investigation. See Tallahassee Furniture Co. v. Harrison, 583 So. 2d 744, 761 (Fla. 1st DCA 1991) (whether an employer took the appropriate "efforts to inquire into [a] prospective employee's background . . . [is] a jury question.").

Lee Memorial also argues that there is no evidence to support Plaintiff's claim that her alleged assault by Hechavarria was reasonably foreseeable at the time of his hiring. (Doc. #40, p. 38.) Viewing all evidence and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that a genuine issue of material fact remains as to whether Hechavarria's dangerous propensities "reasonably could have been foreseen at the time of hiring." Maliki, 814 So. 2d at 363. If a jury determines that Lee Memorial failed to conduct an appropriate investigation before it hired Hechavarria, it may find that Lee Memorial should have known about his long history of violence and domestic abuse, and in turn,

---

[8] DNV Healthcare standards stem from the Det Norske Veritas accreditation organization that use broad goals derived from the federal government to develop implementable standards for hospitals. (Doc. #47-14, p. 2.)

conclude that the risk of sexual assault to Plaintiff may have been reasonably foreseeable. See Hobirn, Inc. v. Aerotek, Inc., No. 10-61144-Civ-WILLIAMS, 2012 U.S. Dist. LEXIS 203271, at *19 (S.D. Fla. July 24, 2012) (finding that if a jury found the employer knew or should have known about the employee pleading guilty to stealing from a former employer, then the risk of theft to Plaintiff may have been reasonably foreseeable). Thus, the Court finds it is inappropriate to grant summary judgment on Plaintiff's negligent hiring claim.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #40) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___3rd___ day of January, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record